# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

STEVEN DELOSH,

           Plaintiff,

v.

STATE OF NEVADA DIVISION OF
PRISONERS, et al.,

           Defendants.

Case No. 2:14-cv-00632-APG-GWF

**ORDER DENYING IN PART AND GRANTING
IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

(Dkt. ##42, 43)

Plaintiff Steven Delosh is a prisoner in the custody of defendant State of Nevada Department of Corrections ("NDOC") at High Desert State Prison ("High Desert"). A fight occurred among inmates in a dining hall at High Desert, which prompted correctional officers to fire birdshot. Delosh, a bystander, was wounded by the birdshot. Delosh filed this lawsuit asserting federal claims under 42 U.S.C. § 1983 and various state law claims against "State of Nevada Division of Prisoners" (sic)[1] ("NDOP"), NDOC, NDOC Director James "Greg" Cox, NDOC Medical Director Robert Bannister, High Desert Warden Dwight Neven, Medical Officer Gray Graham, NDOC Chief Nursing Officer Mary Eaton, Dr. Romeo Aranas, and Correctional Officers Michael Ramos and Randolph Moye.

Defendants move for summary judgment arguing that as a matter of law Delosh cannot prevail on his claims, that some of his claims are barred by a defense of qualified immunity, and that defendants Cox, Neven, Bannister, and Eaton cannot be liable under a theory of respondeat superior. Because factual issues surround many of Delosh's claims, I cannot grant the defendants' motion in its entirety. However, I will grant judgment on the claims that Delosh has failed to properly support.

---

[1] Delosh refers to the "Nevada Division of Prisoners" in the caption of the Amended Complaint and in several places throughout that pleading. (Dkt. #13.) I presume that is a typographical error and he means to refer to the Nevada Division of Prisons.

1  I.   **BACKGROUND**

2     On the morning of January 28, 2012, Delosh was eating breakfast in Dining Hall D at

3  High Desert. (Dkt. #49-4 at 8.)  A fist fight broke out between two inmates.[2] (*Id.*)  Delosh was not

4  involved in the fight. (*Id.*; Dkt. #42-4 at 2.)[3]  Officer Michael Ramos was stationed in Dining Hall

5  D's gun tower. (Dkt. #42-4 at 2.)  Officer Randolph Moye was stationed as a floor officer in

6  Dining Hall D. (Dkt. #42-3 at 4.)

7     According to Moye and Ramos, both officers gave verbal commands to the inmates to

8  stop fighting, but the inmates did not comply. (*Id.* at 4; Dkt. #42-4 at 2.)  Ramos states that when

9  the inmates continued to fight, he fired a blank round as a warning shot. (Dkt. #42-4 at 2.)  When

10  his warning shot failed to stop the fight, he loaded his shotgun and "skip shot" one round of

11  birdshot near the fighting inmates.[4] (*Id.*)  According to Ramos, the fighting inmates got on the

12  ground after this shot but continued to fight, so he skip shot a second round of birdshot into the

13  area of the fighters. (*Id.* at 2-3.)  After the second round was fired, the inmates continued to fight

14  until officers were able to physically separate and handcuff them. (*Id.*)  High Desert medical

15  personnel then entered and checked the two fighting inmates, along with multiple other inmates.

16  The injured inmates were taken to the infirmary and the fighting inmates were sent to segregation.

17

18     [2] There is no evidence that a weapon was used in the fight.

19     [3] The defendants attached to their motion the sworn affidavits of Michael Ramos, Dwight Neven,
and Dr. James Holmes. (Dkt. ##42-4, 42-7, 42-8 (Exhibits D, G, and H, respectively).)  The defendants

20  submitted several additional exhibits unattached to a sworn declaration or affidavit and which are not
authenticated based on personal knowledge.  Federal Rule of Evidence 901(a) requires "authentication or

21  identification as a condition precedent to admissibility." Fed. R. Evid. 901(a).  Pursuant to Rule 901(b)(4),
a document may be authenticated by a review of its appearance, contents, and substance to determine

22  whether it is what the submitting party claims it to be.  Upon review, Exhibits A, C, and J (NDOC
Administrative Regulations, an NDOC investigation detail report, and a medical incident report,

23  respectively) to the defendants' motion for summary judgment appear to be official NDOC prison
regulations and records which I find sufficiently genuine as to be authenticated. (Dkt. ##42-3, 44-1, 44-2.)

24  The other unattached exhibits the defendants have submitted include various photographs and a screen
capture from an internet website. (Dkt. ##42-2, 42-5, 42-6, 42-9.)  These documents cannot be

25  authenticated based on a review of their contents and appearance and I therefore will not consider them in
deciding this motion.

26

27     [4] "Skip shot" means firing a shot at the ground, rather than aiming it directly at the target. (Dkt.
#42-7 at 3.)  According to Warden Neven, skip shooting birdshot is permitted to break up a fight. (*Id.*)

28

1   (Dkt. #42-3 at 6.) Ramos states that he was not aiming at anyone other than the two fighting

2   inmates and that he shot the rounds to restore order in the dining hall. (Dkt. #42-4 at 3.) Moye's

3   recounting of the event, along with the details given by other correctional officers, is essentially

4   in line with Ramos's. (Dkt. #42-3 at 4-5.)

5        In contrast, Delosh states that when he saw the two inmates fighting he laid on the ground

6   with his face down; he then heard the first shot. (Dkt. #49-4 at 8.) He next heard Moye yell

7   "shoot the motherfuckers, shoot them now." (*Id.*) After that, Delosh heard the second and third

8   shots, the second one hitting him in the back left side. (*Id.*) Numerous other prisoners present in

9   the dining hall state that when Moye yelled at Ramos to shoot, Moye pointed at the table where

10  Delosh and other inmates were sitting and not at the fighters. (*See* Dkt. ##49-1 at 3, 8, 11; 49-4 at

11  6, 12.) One prisoner seated next to Delosh states that he saw Ramos point the gun directly at him.

12  (Dkt. #49-1 at 3.) Several prisoners state that Ramos aimed his shots nowhere near the fight. (*See*

13  Dkt. ##49-1 at 8, 11; 49-2 at 2, 5, 8, 14; 49-3 at 5; 49-4 at 2, 12.) Further, Delosh contends what

14  while multiple inmates were injured by the birdshot, the two fighting inmates were not hit. (Dkt.

15  #49-4 at 9.)

16       Delosh's medical incident report indicates that his injuries were assessed that day. (Dkt.

17  #44-2 at 2.) The report documents multiple shots to Delosh's back, side of face, ear, and back of

18  head, with an assessment of "impaired skin integrity." (*Id.*) Medical staff cleansed and covered

19  the injuries and released Delosh back into custody. (*Id.*)

20       NDOC medical staff do not always remove birdshot pellets from an inmate's body. (Dkt.

21  #42-8 at 2.) Rather, each inmate is evaluated on a case-by-case basis and whether birdshot is

22  removed depends on the location of the birdshot within the body. (*Id.*) If birdshot is located near

23  vital organs or lodged deep in the body, the inmate is transported to an off-site hospital. (*Id.*) If,

24  however, the birdshot is in the flesh only, and not too deep, it will not be surgically removed. (*Id.*)

25  The physician states that in many cases the body's immune system will either push the pellet out

26  of the skin over time or scar tissue will form around the pellet protecting the rest of the body from

27

28

1   damage. (*Id.*)  Further, because of the small size of the pellets, surgically extracting them could

2   cause more damage and perhaps lead to infection and other medical complications. (*Id.*)

3       Delosh states that after pictures were taken of his injuries he was escorted back to his unit

4   and placed in lockdown for four days with no medical after-care given. (Dkt. #49-4 at 9.)  He

5   contends that his injuries were serious and that he was not provided the proper medical care. (*Id.*)

6   **II.**    **LEGAL STANDARD**

7       Pursuant to Federal Rule of Civil Procedure 12(d), when, on a motion brought under Rule

8   12(b)(6), "matters outside the pleadings are presented to and not excluded by the court, the

9   motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  Both

10  the defendants and Delosh have presented evidence throughout their motion papers that exceeds

11  the scope of the pleadings.  I will therefore construe the defendants' motion as a motion for

12  summary judgment.

13      Summary judgment is appropriate when the pleadings, discovery responses, and affidavits

14  "show there is no genuine issue as to any material fact and that the movant is entitled to judgment

15  as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P.

16  56(c)).  For summary judgment purposes, I view all facts and draws all inferences in the light

17  most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793

18  F.2d 1100, 1103 (9th Cir. 1986).

19      If the moving party demonstrates the absence of any genuine issue of material fact, the

20  burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine

21  issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at

22  323.  The nonmoving party "must do more than simply show that there is some metaphysical

23  doubt as to the material facts." *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (citations

24  omitted).  He "must produce specific evidence, through affidavits or admissible discovery

25  material, to show" a sufficient evidentiary basis on which a reasonable fact finder could find in

26  his favor. *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at

27  248-49.

28

1    III.    <u>ANALYSIS</u>

2         A.    **Summary Judgment Prior to Discovery**

3         Delosh argues that the defendants' motion for summary judgment is premature and that he

4    must be allowed the opportunity to conduct discovery to prove his claims.  A party may file a

5    motion for summary judgment prior to discovery. Fed. R. Civ. P. 56(b).  If the nonmoving party

6    believes that it cannot present facts essential to its opposition without discovery, then it can bring

7    a motion under Rule 56(d) requesting additional time. Fed. R. Civ. P. 56(d).  Under Rule 56(d), a

8    party requesting additional time to conduct discovery to oppose summary judgment "must show:

9    (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2)

10   the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment."

11   *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir.

12   2008).  If the nonmoving party does not satisfy these requirements, I may rule on summary

13   judgment without granting additional time for discovery. *Id.*

14        Here, Delosh has failed to move under Rule 56(d) and has failed to show what facts he

15   hopes to elicit through discovery, that such facts exist, and how such facts are essential to his

16   opposition.  Therefore, I have no basis on which to defer consideration of the defendants' motion.

17        B.    **Qualified Immunity**

18        Section 42 U.S.C. § 1983 allows suits against government officials in their individual

19   capacities who, under color of law, deprive individuals of constitutional rights.  However, some

20   government officials are protected from such suits based on a defense of qualified immunity.

21   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity protects law enforcement

22   officers, including prison officials and guards, from civil damage suits resulting from

23   discretionary acts unless their conduct violates "clearly established statutory or constitutional

24   rights of which a reasonable person would have known." *Id.*  Under this standard, summary

25   judgment based on qualified immunity is improper if, under the plaintiff's version of the facts,

26   and in light of the clearly established law, a reasonable guard or officer could not have believed

27   his conduct was lawful. *See Grossman v. City of Portland*, 33 F.3d 1200, 1208 (9th Cir. 1994).

28                                        Page 5 of 15

1   Therefore, I must deny summary judgment based on qualified immunity if: (1) Delosh has alleged

2   an actual violation of his rights, and (2) that right was clearly established at the time of the alleged

3   misconduct such that a reasonable official would understand that what he was doing violated that

4   right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

5          The inquiry into whether qualified immunity applies is separate from the inquiry into

6   whether there has been a constitutional violation. *Saucier*, 533 U.S. at 205.  A defendant's

7   "qualified immunity is not defeated simply because a triable issue of fact exists" as to whether he

8   violated the plaintiff's rights. *Marquez v. Gutierrez*, 322 F.3d 689, 693 (9th Cir. 2003) ("courts

9   may not simply stop with a determination that a triable issue of fact exists as to whether prison

10  officials [acted unconstitutionally]") (internal quotations omitted).

11         While courts ordinarily look to prior law to determine whether a right was clearly

12  established at the time of the misconduct, that does not mean that the "very action in question

13  [must have] previously been held unlawful." *Alexander v. Perrill*, 916 F.2d 1392, 1398 (9th Cir.

14  1990) ("[T]he law simply does not require that we find a prior case with the exact factual

15  situation in order to hold that the official breached a clearly established duty.").  Rather, qualified

16  immunity is inappropriate where the preexisting law was sufficient to provide the defendant with

17  "fair warning" that his conduct was unlawful. *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir.

18  2000).

19         The defendants argue that they are entitled to qualified immunity for the Eighth

20  Amendment excessive force claims against Moye and Ramos.  They maintain that Ramos used

21  the birdshot in order to break up the fight and in a good faith effort to gain compliance from the

22  fighting inmates.  Further, they argue that because use of birdshot to break up fights is permitted

23  within prisons, neither Ramos in particular nor a reasonable prison guard would have believed

24  firing birdshot into a prison dining hall in order to break up a fight would be unlawful.  Delosh

25  responds that Moye and Ramos were not acting in a good faith effort to restore discipline when

26  Moye pointed, and Ramos shot, at a table of inmates unconnected to the fight.  He further

27  contends that Moye and Ramos were intentionally trying to harm the inmates sitting at his table in

28                                           Page 6 of 15

1    retaliation for the prisoners having filed complaints against various correctional officers.

2          When an inmate alleges an Eighth Amendment violation for excessive force, the core

3    inquiry is whether the force was applied in a good faith effort to maintain or restore discipline or

4    was done maliciously and sadistically. *Whitley v. Albers*, 475 U.S. 312, 321 (1986); *see also*

5    *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  In making this determination, I may consider such

6    factors as the extent of the injury suffered by the inmate, the need for the application of force, the

7    amount of force used, the threat reasonably perceived by responsible officials, and any efforts

8    made to temper the severity of the response. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  These

9    factors may suggest "whether the use of force could plausibly have been thought necessary in a

10   particular situation, or instead evinced such wantonness with respect to the unjustified infliction

11   of harm as is tantamount to a knowing willingness that it occur." *Id.*  Courts must give deference

12   to prison officials when reviewing security measures taken in particular incidents, and cannot

13   substitute their own judgment for that of officials. *Whitley*, 475 U.S. at 322.  However, while

14   deference must be given when reviewing prison security measures, such deference does not

15   "insulate from review actions taken in bad faith and for no legitimate purpose." *Id.*

16         Here, Delosh has presented affidavits from numerous inmates who state that Moye and

17   Ramos were intentionally aiming at a table of inmates uninvolved in the fight and nowhere near

18   the fighting inmates. (*See* Dkt. ##49-1 at 3, 8, 11; 49-2 at 2, 5, 8, 14; 49-3 at 5; 49-4 at 2, 6, 12.)

19   One prisoner at Delosh's table states that he saw Ramos point the gun directly at him. (Dkt. #49-1

20   at 3.)  Delosh says that the two fighting inmates were not even hit with birdshot. (Dkt. #49-4 at 9.)

21   While Ramos states that he was not aiming at anyone other than the two fighting inmates and that

22   he fired the rounds to restore order to the dining hall (Dkt. #42-4 at 3.), I must view all facts and

23   draw all inferences in the light most favorable to Delosh.  Genuine issues of fact exist as to

24   whether the officers' actions were done in a good faith effort to maintain or restore discipline or

25   done maliciously and sadistically.

26         In addition, viewing the facts in the light most favorable to Delosh, and looking at the

27   incident from the perspective of a reasonable prison guard, there are issues of fact as to whether a

28                                          Page 7 of 15

1 reasonable prison guard would believe that pointing and shooting directly at a table of inmates

2 uninvolved in a fight would be necessary or reasonable to obtain compliance from two fighting

3 inmates, or necessary to maintain order.  I therefore deny the defendants' request for summary

4 judgment on Delosh's Eighth Amendment claims based on qualified immunity.

5        **C.**    **Eighth Amendment Excessive Force**

6       Because genuine issues of fact exist as to whether Moye's and Ramos's actions were done

7 in a good faith effort to maintain or restore discipline or were done maliciously and sadistically, I

8 must deny the defendants' summary judgment motion on Delosh's claims of Eighth Amendment

9 violations for excessive force against Moye and Ramos.

10        **D.**    **Eighth Amendment Medical Deliberate Indifference**

11       Delosh asserts an Eighth Amendment deliberate indifference claim against defendants

12 Bannister, Martin, Graham, and Eaton, alleging they failed to give Delosh proper medical care

13 after the shooting. (Dkt. #13 at 6.)  He further alleges that by having a policy of not removing

14 birdshot from inmates, NDOC Medical Director Bannister has shown deliberate indifference to

15 the medical needs of inmates. (*Id.*)

16       The defendants argue that High Desert physicians have a valid medical reason for not

17 removing birdshot pellets when they are not near vital organs because surgical extraction could

18 lead to infection and may cause more damage than leaving the pellets in place.  They contend that

19 while Delosh might disagree with his medical treatment, such a disagreement does not constitute

20 a constitutional violation.  Delosh responds that he was shot several times by birdshot, that he was

21 locked down for four days without medical care, that the birdshot has never been removed, that

22 the pellets have caused him excruciating pain, and that a reasonable juror could find that he faced

23 a substantial risk of harm.  Further, he argues that while the risks of surgery are well known, it is

24 also common knowledge that foreign substances in the body can cause great risk, and therefore

25 the lack of medical evaluation shows deliberate indifference.

26       A prison official violates the Eighth Amendment when he acts with "deliberate

27 indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828

28                                  Page 8 of 15

1   (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective

2   standard—that the deprivation was serious enough to constitute cruel and unusual punishment—

3   and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th

4   Cir. 2012).

5   　　First, a plaintiff must show "a serious medical need by demonstrating that failure to treat a

6   prisoner's condition could result in further significant injury or the unnecessary and wanton

7   infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations

8   omitted). Second, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's

9   pain or possible medical need and (b) harm caused by the indifference." *Id.* "Indifference may

10  appear when prison officials deny, delay, or intentionally interfere with medical treatment, or it

11  may be shown by the way in which prison physicians provide medical care." *Id.* (internal

12  quotations omitted).

13  　　The High Desert medical staff assessed Delosh's injury as "impaired skin integrity," and

14  decided to clean and cover the injuries. (Dkt. #44-2 at 2.) Delosh has provided no evidence as to

15  the seriousness or severity of his injuries or evidence of any risk of serious harm that has or

16  would come to him because the pellets were not removed. Rather, Delosh's affidavit states only

17  that after officers took photos of his wounds he was sent back to his unit and locked down for

18  four days with no further medical care. (Dkt. #49-4 at 9.) Delosh likewise has offered no

19  evidence that High Desert's policy of not always removing birdshot amounts to deliberate

20  indifference to the inmates' medical needs.

21  　　There appear to be no genuine issues of material fact related to Delosh's Eighth

22  Amendment deliberate indifference claim. Even viewing the evidence in the light most favorable

23  to him, Delosh has not shown he has or had a serious medical need, nor has he presented any

24  evidence that the medical staff purposefully acted or failed to respond to his pain or medical need

25  appropriately. I therefore grant summary judgment to the defendants on Delosh's claim of Eighth

26  Amendment violations for deliberate indifference to serious medical needs against Bannister,

27  Martin, Graham, and Eaton.

28  　　　　　　　　　　　　　　　Page 9 of 15

1        **E.    Negligence and Gross Negligence**

2        Delosh asserts claims of negligence against Moye, Ramos, and Warden Neven, and claims

3   of gross negligence against Moye, Ramos, Warden Neven, NDOP, NDOC, and Director Cox.

4        To prevail on a negligence claim under Nevada law, a plaintiff must prove (1) the

5   existence of a duty of care, (2) a breach of that duty, (3) the breach was the legal cause of the

6   plaintiff's injuries, and (4) the plaintiff has suffered damages. *Butler ex rel. Biller v. Bayer*, 168

7   P.3d 1055, 1065 (Nev. 2007).

8        Under Nevada law, "[a] party is grossly or wantonly negligent if he acts or fails to act

9   when he knows or has reason to know facts which could lead a reasonable person to realize that

10  his conduct not only creates unreasonable risk of bodily harm to others but also involves high

11  probability that substantial harm will result." *Batt v. State*, 901 P.2d 664, 667, fn. 5 (Nev. 1995)

12  (citation omitted).

13       Whether a defendant was negligent is usually a question of fact for the jury to resolve.

14  *Butler ex rel. Biller*, 168 P.3d at 1063.  However, if a plaintiff cannot recover as a matter of law,

15  then the defendant is entitled to summary judgment. *Id.*  "To establish entitlement to judgment as

16  a matter of law, a moving defendant must show that one of the elements of the plaintiff's prima

17  facie case . . . is clearly lacking as a matter of law." *Id.* (internal quotations omitted).

18            *1.    Officers Moye and Ramos*

19       The defendants argue that summary judgment is appropriate on both the negligence and

20  gross negligence claims because (1) Moye and Ramos had no duty of care not to use force in

21  order to restore and maintain order, and (2) the officers did not breach any duty of care they owed

22  to the inmates.  Rather, they contend that the prison staff had a duty of care to stop the fight and

23  to prevent a riot.  Further, they argue that Moye and Ramos were justified in using birdshot to

24  restore order and maintain discipline, and that use of birdshot is permitted by NDOC.  Delosh

25  counters that the defendants owed a duty of care not to maliciously and sadistically harm him.  He

26  further argues that the officers intentionally pointed and shot at him and other inmates, rather than

27  at the inmates who were actually fighting.

28

Under Nevada law, all state officials, including prison officials, have a duty to exercise ordinary care in performing their duties. *Butler ex rel. Biller*, 168 P.3d at 1065. Delosh has offered evidence that Moye and Ramos intentionally aimed at him and other inmates unconnected to the fight. (*See* Dkt. ##49-1 at 3, 8, 11; 49-2 at 2, 5, 8, 14; 49-3 at 5; 49-4 at 2, 6, 12.) A reasonable jury could find that the officers intentionally pointed at and shot him and other inmates. Thus, there are issues of fact as to whether (1) Moye and Ramos breached their duty to exercise reasonable care, and (2) Moye's and Ramos's behavior rose to the level of gross negligence. Therefore, I deny summary judgment as to the negligence and gross negligence claims against Moye and Ramos.

*2.      NDOP, NDOC, Director Cox, and Warden Neven*

The defendants argue that summary judgment is appropriate on the negligence claim against Neven and the gross negligence claim against Neven, NDOP, NDOC, and Cox for the same reason it is appropriate for Moye and Ramos. Namely, that the officers had no duty of care not to use force, that the officers did not breach any duty they owed, and that because the officers involved cannot be held liable, neither can the other defendants.

Delosh alleges in his complaint that Neven was negligent by allowing the "default, initial action taken when altercations ensue" to be that correctional officers shoot at inmates, thereby allowing an unsafe environment to exist at High Desert. (Dkt. #13 at 10:6-10.) Similarly, he alleges that NDOP, NDOC, Cox, and Neven were grossly negligent by "having an ongoing policy allowing Officer's (sic) to immediately shoot shot guns at inmates when they are involved in altercations." (*Id.* at 14:21-25.) However, Delosh offers no evidence that such a policy or default action actually exists, or any other evidence supporting these claims.

While not alleged in his complaint, Delosh argues in his opposition to the motion that NDOP, NDOC, Cox, and Neven are liable for the torts committed by Moye and Ramos under the doctrine of respondeat superior. "[R]espondeat superior liability attaches . . . when the employee is under the control of the employer and when the act is within the scope of employment." *Molino v. Asher*, 618 P.2d 878, 879 (Nev. 1980). Therefore, under Nevada law, "an actionable claim on a

1   theory of respondeat superior requires proof that (1) the actor at issue was an employee, and (2)

2   the action complained of occurred within the scope of the actor's employment." *Rockwell v. Sun*

3   *Harbor Budget Suites*, 925 P.2d 1175, 1179 (Nev. 1996). There is no dispute that Moye and

4   Ramos were employees and under the control of the defendants, and that the shooting occurred

5   within the scope of their employment. The defendants argue only that there is no respondeat

6   superior liability for federal § 1983 actions. While that is true, they give no argument as to why

7   respondeat superior liability would not apply on Delosh's state law negligence and gross

8   negligence claims based on the actions of Moye and Ramos.

9       Therefore, I will deny summary judgment on Delosh's negligence and gross negligence

10   claims against NDOC, NDOP, Cox, and Neven that are based solely on respondeat superior

11   liability for Moye's and Ramos's actions. But I grant summary judgment on Delosh's negligence

12   claim against Nevin and his and gross negligence claims against NDOC, NDOP, Cox, and Neven

13   which are not based on respondeat superior liability because Delosh offers no evidence

14   supporting them.

15       **F.   Negligent Hiring, Training, Retention, and Supervision**

16       Delosh has also asserted claims of negligent hiring, training, retention, and supervision

17   against NDOP, NDOC, Director Cox, and Warden Neven. The defendants again argue that Moye

18   and Ramos were justified in using the birdshot to restore order and maintain discipline and that

19   the use of birdshot is permitted by NDOC. Delosh responds that Moye and Ramos used the fight

20   between the two inmates as a pretext to intentionally shoot at him and other inmates and that such

21   actions prove that the defendants failed to adequately train and supervise the officers.

22       Under Nevada law, an employer has a general duty "to conduct a reasonable background

23   check on a potential employee to ensure that the employee is fit for the position." *Hall v. SSF,*

24   *Inc.*, 930 P.2d 94, 98 (Nev. 1996). An employer also "has a duty to use reasonable care in the

25   training, supervision, and retention of his or her employees to make sure that the employees are

26   fit for their positions." *Id*. at 99.

27

1    Delosh alleges in his complaint that the defendants breached their duty to properly and

2    adequately train prison personnel when they allowed officers to shoot erratically throughout a

3    dining room and hit inmates uninvolved in the altercation. (Dkt. #13 at 12-13.)  However, Delosh

4    provides no evidence to support his claims of negligent hiring, training, retention, or supervision.

5    He does not identify what hiring, training, or supervision procedures he believes are inadequate or

6    improper.  Nor has he provided any evidence that any supposed breach of the defendants' duty to

7    reasonably train and supervise prison personnel was the cause of his injuries.  He offers only

8    conclusory allegations: the defendants had a duty to avoid unreasonable risk of harm to inmates, I

9    was shot, and therefore the guards must have been inadequately hired, trained and supervised.

10    That is insufficient to withstand a summary judgment motion.  Therefore, I grant summary

11    judgment to the defendants on these claims.

12    **G.    Assault and Battery**

13    Finally, Delosh asserts an assault and battery claim against Ramos.  To establish an

14    assault, a plaintiff must show that the actor (1) intended to cause harmful or offensive physical

15    contact, and (2) the victim was put in apprehension of such contact. *Burns v. Mayer*, 175 F. Supp.

16    2d 1259, 1269 (D. Nev. 2001) (citing the Restatement (Second) of Torts § 21 (1965) when

17    analyzing civil assault claim under Nevada law).  To establish a battery, a plaintiff must show that

18    the actor (1) intended to cause harmful or offensive contact, and (2) such contact occurred. *Id*.

19    (citing the Restatement (Second) of Torts §§ 13, 18 when analyzing civil battery claim under

20    Nevada law).

21    Nevada law relating to civil assault and battery claims against prison officers is scant.

22    However, in the context of a police arrest, Nevada courts have found that contact may constitute

23    an assault or battery only if the officer used unreasonable force in effectuating the arrest. *See*

24    *Yada v. Simpson*, 913 P.2d 1261, 1262-63 (Nev. 1996), *superseded by statute on other grounds as*

25    *recognized by RTTC Comm'n, LLC v. Saratoga Flier, Inc.*, 121 Nev. 34, 42 (2005); *see also*

26    *J.D.H. v. Las Vegas Metro. Police Dep't*, No. 2:13-CV-01300-APG-NJK, 2014 WL 3809131, at

27    *7 (D. Nev. Aug. 1, 2014) ("Thus, to sustain claims of excessive force, battery, or assault,

28

1   Plaintiffs' allegations must establish that [the officer's] use of force was objectively unreasonable

2   under the circumstances.").

3         The defendants argue that the use of birdshot is permitted by NDOC and that Ramos fired

4   birdshot into the dining hall in a good faith effort to maintain order and restore discipline.

5   Therefore, they argue, the force used was not unreasonable.  Delosh contends that Ramos

6   intentionally shot at him and other inmates uninvolved in the fight.  As stated above, issues of fact

7   remain as to whether Ramos intended to cause harmful or offensive contact by shooting at Delosh

8   and whether his actions were reasonable.  I therefore deny summary judgment on Delosh's assault

9   and battery claim against Ramos.

10  **IV.   CONCLUSION**

11        IT IS THEREFORE ORDERED that the defendants' motion for summary judgment **(Dkt.**

12  **##42, 43) is GRANTED in part and DENIED in part** as follows:

13        1.  Summary judgment is **GRANTED in part and DENIED in part** as to Delosh's

14            first cause of action asserting Eighth Amendment violations.  It is granted as to the

15            Eighth Amendment deliberate indifference claims against Bannister, Martin,

16            Graham, and Eaton.  It is denied as to the Eighth Amendment excessive force

17            claims against Moye and Ramos.

18        2.  Summary judgment is **GRANTED in part and DENIED in part** as to Delosh's

19            second cause of action (negligence) and fourth cause of action (gross negligence).

20            It is denied as to Moye and Ramos and denied as to claims against NDOC, NDOP,

21            Cox, and Neven based on respondeat superior liability for the actions of Moye and

22            Ramos.  It is granted as to any negligence or gross negligence claims against

23            NDOP, NDOC, Cox, and Neven unconnected with their respondeat superior

24            liability for the actions of Moye and Ramos.

25        3.  Summary judgment is **GRANTED** as to Delosh's third cause of action asserting

26            negligent hiring, training, retention, and supervision.

27

28                                    Page 14 of 15

1          4.   Summary judgment is **DENIED** as to Delosh's fifth cause of action asserting

2               assault and battery.

3          Thus, the claims remaining for trial are: (1) an Eighth Amendment excessive force claim

4   against Moye and Ramos; (2) negligence and gross negligence claims against Moye and Ramos;

5   (3) a negligence claim against Neven based on respondeat superior liability for the actions of

6   Moye and Ramos; (4) a gross negligence claim against NDOC, NDOP, Cox, and Neven based on

7   respondeat superior liability for the actions of Moye and Ramos; and (5) an assault and battery

8   claim against Ramos.

9          DATED this 22nd day January, 2016.

10                                                   _____
                                                     ANDREW P. GORDON
11                                                   UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    Page 15 of 15